IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEULAH O'DONNELL, | : | |
|     Plaintiff-Counterclaim | : | |
|     Defendant | : | No. 1:20-cv-00880 |
| | : | |
|     and | : | (Judge Kane) |
| | : | |
| GLEN BOYER, | : | |
|     Intervenor-Plaintiff- | : | |
|     Counterclaim Defendant | : | |
| | : | |
|     v. | : | |
| | : | |
| NORTH AMERICAN COMPANY | : | |
| FOR LIFE AND HEALTH | : | |
| INSURANCE, | : | |
|     Defendant-Counterclaimant | : | |
| | : | |
|     and | : | |
| | : | |
| NORTH AMERICAN COMPANY | : | |
| FOR LIFE AND HEALTH | : | |
| INSURANCE, | : | |
|     Defendant-Counterclaimant | : | |
| | : | |
|     v. | : | |
| | : | |
| BEULAH O'DONNELL, GLEN | : | |
| BOYER, GENE H. BOYER, ROBERT | : | |
| K. BOYER, and CRAIG A. HATCH, as | : | |
| Executor of the Estate of Paul E. Boyer, | : | |
| deceased, | : | |
|     Counterclaim Defendants | : | |

## MEMORANDUM

Before the Court in the above-captioned case is the Motion for Interpleader Deposit (Doc.

No. 43) filed by Defendant-Counterclaimant North American Company for Life and Health

Insurance ("Defendant"). Counterclaim Defendants – Plaintiff Beulah O'Donnell ("Plaintiff"),

Intervenor Glen Boyer ("Intervenor"), Gene H. Boyer, Robert K. Boyer, and Craig A. Hatch, as

Executor of the Estate of Paul E. Boyer (collectively, "Counterclaim Defendants") – have concurred in the motion.  (Doc. Nos. 43-2, 46.)  For the reasons that follow, the Court will grant the motion.

I.      **BACKGROUND**

On May 29, 2020, Plaintiff filed a complaint seeking an order directing Defendant to pay directly to her the proceeds of five (5) annuity contracts ("Annuities" or "Annuity Contracts") purchased by and payable upon the death of decedent Paul E. Boyer ("Decedent").  (Doc. No. 1.)  Defendant answered the complaint in August 2020, asserting a counterclaim for interpleader against Plaintiff and a "third-party complaint" for interpleader against Intervenor.  (Doc. No. 9.)  After the Court granted Intervenor's motion to intervene (Doc. Nos. 6, 10), Defendant filed an amended counterclaim for interpleader, adding Intervenor as a Counterclaim Defendant (Doc. No. 20).  Defendant moved the Court for leave to file another amended counterclaim in October 2020 in order to join Gene H. Boyer, Robert K. Boyer, and Craig A. Hatch as Counterclaim Defendants (Doc. No. 23).  In December 2020, the Court granted Defendant's motion for leave to amend (Doc. No. 36), Plaintiff filed an answer to the amended pleading (Doc. No. 41), and Defendant filed the operative counterclaim (Doc. No. 37), obtained waivers of service from the newly joined parties (Doc. Nos. 42, 44-45), and filed the instant motion (Doc. No. 43).

In its amended counterclaim for interpleader,[1] Defendant seeks to resolve potentially competing claims to the Annuities, which, with interest, total $1,305,240.74 as of December 31, 2020.  (Doc. Nos. 37 ¶ 12, 43-1 ¶ 5.)[2]  On or about February 22, 2005, Decedent "designated

---

[1] The following facts underlying Defendant's counterclaim are taken from its Amended Counterclaim for Interpleader.  (Doc. No. 37.)
[2] The Annuity Contracts provide various definitions: (1) the "[a]nnuitant" is "[t]he person(s)

either his father, Roy S. Boyer, or his brother, Robert K. Boyer, as revocable beneficiaries of the [Annuities]" and "did not name any [c]ontingent [b]eneficiaries."  (Id. ¶¶ 19-21.)   Roy S. Boyer died in 2005.  (Id. ¶ 22.)   Much later, in March 2018, Defendant received Annuity Beneficiary Change Request forms naming Plaintiff as the primary irrevocable beneficiary of four of the Annuity Contracts.  (Id. ¶ 23). In June 2018, Defendant "received a Certificate of Power of Attorney, naming [Plaintiff] as [Decedent]'s power of attorney" (id. ¶ 24), and in June and July 2018, Defendant received an "Annuity Beneficiary Change Request forms, naming [Plaintiff] as the Primary Irrevocable Beneficiary of [four of] the Annuity Contracts," with "[n]o [c]ontingent [b]eneficiaries" (id. ¶ 25).   Upon receipt thereof, Defendant provided written confirmation that Plaintiff "was the Irrevocable Beneficiary for four [of the] Annuity Contracts."  (Id. ¶ 26.)

In January 2020, Defendant received an Annuity Beneficiary Change Request form "requesting that [Decedent's] brother, Glen R. Boyer, be named as the [r]evocable [p]rimary [b]eneficiary for all five Annuity Contracts."  (Id. ¶ 27.)   "Those forms did not contain [Plaintiff's signature as] Irrevocable Primary Beneficiary of [four of the] Annuity Contract[s]."  (Id. ¶ 28.)   The same month, Defendant "received a handwritten note signed by [Decedent] that

---

named in the [annuities] application and on the Specifications Page to whom periodic income will be paid" (id. ¶ 13); (2) the "[o]wner(s)" of the Annuities is or are "[t]he person(s) named in the application and on the [s]pecifications [p]age to whom periodic income will be paid" (id. ¶ 14); (3) the "[b]eneficiary" is the person(s) "to whom the death benefit will be paid in the event of the death of the [o]wner or [a]nnuitant" (id. ¶ 16); and (4) the "[p]rimary [b]eneficiary" is the "person(s), designated by [the owner], who has the first right to receive the death benefit in the event of the death of the [o]wner or [a]nnuitant" (id. ¶ 17.)   Under the Annuity Contracts, upon written notice to Defendant, the "[o]wner" can "change [o]wners and [b]eneficiaries" subject to the rights of "[a]ny irrevocable [b]eneficiary" (id. ¶ 15) and can "change a revocable [b]eneficiary," unless "otherwise stated in the [b]eneficiary designation" (id. ¶ 16.)   If upon the death of the owner or annuitant, "no [b]eneficiary is living," the Annuity Contracts direct that the proceeds of the Annuities be paid to the owner or the owner's estate.  (Id. ¶ 18.)

3

stated he did not want [Plaintiff] to be the beneficiary on his Annuity Contracts, and that he wanted his brother to be the beneficiary," adding, "[p]lease change as soon as possible." (Id. ¶ 29-30.) The note further indicated "that [Plaintiff] was not [Decedent]'s Power of Attorney, and that he did not make her his Power of Attorney, 'but somehow she did it.'" (Id. ¶ 31.) Defendant "also received a Certificate of Power of Attorney in January 2020, naming Glen R. Boyer as his Power of Attorney." (Id. ¶ 32.) Decedent died on January 16, 2020, "which was before the [m]aturity [d]ate of all five Annuity Contracts." (Id. ¶ 33.) In response, Plaintiff and Intervenor submitted competing claims to the proceeds of all five Annuity Contracts. (Id. ¶ 34-35.)

At issue in this action is a determination as to which party or parties are entitled to the proceeds of the Annuities. Defendant argues that it is entitled to deposit the proceeds of the Annuities with the Clerk of Court given the conflicting claims to the proceeds, including the following: Decedent's communication to Defendant that "he did not want [Plaintiff] to be the beneficiar[y] on his Annuity Contracts" (id. ¶ 36); Plaintiff and Intervenor's "adverse [] and conflict[ing]" claims (id. ¶ 37); and Intervenor's counsel's representation that, if the parties cannot agree as to whom the proceeds should be paid, counsel will file a lawsuit on behalf of Counterclaimant Defendant Robert K. Boyer (id. ¶ 38). As Defendant notes, "for any lawsuit by Robert K. Boyer against [Defendant] to recover the proceeds of the three Annuities for which he was named the original revocable [p]rimary [b]eneficiary to be successful, Robert K. Boyer would have to allege and prove that the beneficiary designations of both [Plaintiff] and [Intervenor] were invalid." (Id. ¶ 39.) However, if the Court "determined that the beneficiary designations of both [Plaintiff] and [Intervenor] were invalid, then [Defendant] would [] be

4

exposed to potential claims by Gene R. Boyer and Craig A. Hatch, as Executor of the Estate of Paul E. Boyer, deceased, for the proceeds of the two Annuities for which Roy S. Boyer, now deceased, was named the original revocable [p]rimary [b]eneficiary." (Id. ¶ 41.)

Asserting that it is a "disinterested stakeholder" with "no interest in the proceeds of the Annuity Contracts payable (except to recover its attorneys' fees and costs of this action), Defendant "respectfully requests that this Court determine to whom said benefits should be paid."  (Id. ¶ 43.)   Defendant maintains that it is ready and willing to pay the proceeds to the person or persons entitled to them, but under the circumstances, it cannot determine the proper recipient(s) of the proceeds without exposing itself to potential multiple liability as a result of the parties' potentially competing claims.   (Doc. No. ¶¶ 42-43.)   In its amended counterclaim for interpleader, Defendant seeks to deposit the proceeds of all five Annuity Contracts, together with accrued claim interest, if any, into the Court's registry, and be discharged from all liability to Defendants.   (Id. ¶ 20.)   The Court held a case management conference with the parties on December 17, 2020.   (Doc. No. 39).   The time for filing a brief in opposition having expired, Defendant's motion is ripe for disposition.

**II.    DISCUSSION**

Interpleader is an equitable remedy through which a person holding property, or a stakeholder, can "join in a single suit two or more persons asserting claims to that property." See Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007) (quoting NYLife Distribs., Inc. v. Adherence Grp., Inc., 72 F.3d 371, 372 n.1 (3d Cir. 1995)).   When a stakeholder admits liability to one of the claimants but seeks to avoid the possibility of multiple liability, interpleader permits it "to file suit, deposit the property with the [C]ourt, and withdraw from the

proceedings." See Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009) (quoting Price, 501 F.3d at 275). As a result, "[t]he competing claimants are left to litigate between themselves," and the stakeholder is discharged from any further liability. See id. (quoting Price, 501 F.3d at 275).

There are two options for a party seeking interpleader relief: (1) the federal interpleader statute, 28 U.S.C. § 1335, and (2) Federal Rule of Civil Procedure 22. District courts have subject matter jurisdiction under 28 U.S.C. § 1335 if there is minimal diversity between two or more adverse claimants and if the amount in controversy is $500.00 or more. See 28 U.S.C. § 1335(a). By contrast, "rule interpleader is no more than a procedural device; the plaintiff must plead and prove an independent basis for subject matter jurisdiction." See Price, 501 F.3d at 275. Defendant relies on statutory and rule interpleader. (Doc. No. 37 at 7.) Defendant pleads diversity jurisdiction under 28 U.S.C.§ 1332 given that it is a citizen of Iowa and all but one Counterclaim Defendant (Robert K. Boyer) are Pennsylvania citizens. (Doc. No. 37 at 7.) Defendant also pleads "minimal" diversity jurisdiction under 28 U.S.C. § 1335, which provides for subject matter jurisdiction in interpleader actions where there are "[t]wo or more adverse claimants" who have "diverse citizenship as defined in [§ 1332(a) or (d)]." See id. § 1335 (a), (d); (Doc. No. 37 at 7). Rule 22 of the Federal Rules of Civil Procedure provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." See Fed. R. Civ. P. 22(a)(1).

An interpleader action typically proceeds in two stages. See Hovis, 553 F.3d at 262 (citing NYLife, 72 F.3d at 375). In the first stage, the Court determines if the interpleader complaint was properly brought and whether the stakeholder should be discharged from further

liability to the claimants.  See id.  In the second stage, the Court determines the rights of the claimants to the interpleaded funds.  See id.  The instant case is atypical, as it was Plaintiff who commenced this action, and interpleader did not arise until Defendant filed its counterclaim for interpleader and moved to join additional parties.  See, e.g., ING Bank, N.V. v. M/V African Swan, No. 16-cv-1242, 2017 WL 1080078, at *5 (S.D.N.Y. Mar. 9, 2017) (addressing the procedural mechanisms for joining parties to a defensive interpleader counterclaim); AVCO Corp. v. Precision Airmotive LLC, No. 4:12-cv-01313, 2013 WL 1953307, at *3 (M.D. Pa. May 10, 2013) (same).  But the same two-stage process that governs interpleader complaints applies to the evaluation of interpleader counterclaims.  See Fed. R. Civ. P. 22(a)(2) (providing for general rules concerning interpleader, noting that a "defendant exposed to [double or multiple liability] may seek "interpleader through a . . . counterclaim").

      The Court turns to an examination of Defendant's interpleader counterclaim to determine whether it is properly brought and whether Defendant should be discharged from further liability.  As the issuer of the Annuities, Defendant constitutes a disinterested stakeholder because it does not dispute that the proceeds are payable to one or more Counterclaim Defendants.  Defendant seeks to ensure that the proper party receives the proceeds and to protect itself against the risk of future liability.  Because of the potential competing claims to the proceeds of the Annuities, it is appropriate for Defendant to seek to deposit the proceeds with the Court and to interplead potential beneficiaries.  Accordingly, the Court finds that Defendant should be discharged from future liability after payment of the proceeds of the Annuities into the Court's Registry.[3]

---

[3] Plaintiff seeks to deposit the proceeds of the Annuities into the Court's Registry pursuant to Federal Rule of Civil Procedure 67(a), which provides as follows:

### III. CONCLUSION

For the reasons discussed above, the Court will grant Defendant's Motion for Interpleader Deposit (Doc. No. 43).[4]  An Order consistent with this Memorandum follows.

---

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some deliverable thing, a party – on notice to every other party and by leave of court – may deposit with the [C]ourt all or part of the money or thing, whether or not that party claims any of it.  The depositing party must deliver to the clerk a copy of the order permitting deposit.

Fed. R. Civ. P. 67(a).

[4] Regarding Defendant's claims for attorney fees and costs, the Court can grant such relief "if the [defendant] is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability."  See Met. Life Ins. Co. v. Kubichek, 83 F. App'x 425, 431 (3d Cir. 2003) (unpublished) (citations omitted).  After Defendant deposits the proceeds of the Annuities in the Court's Registry, the Court will permit Defendant to file an application for fees and costs.